FILED

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

P 2: 09

Alexandria Division

COURT
VIRGINIA

)   **UNDER SEAL**
IN RE:                                    )   (Pursuant to Local Criminal Rule 49 and
)   Fed. R. Crim. P. 6(e))
GRAND JURY CASE NO. 10-GJ-3793            )
)   Case No. 1:19-DM-3
)
)   GRAND JURY NO. 18-4
)

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## CHELSEA MANNING'S MOTION TO QUASH GRAND JURY SUBPOENA

A grand jury of the Eastern District of Virginia has lawfully subpoenaed Chelsea

Manning to testify in connection with an ongoing criminal investigation. The Court has ordered

Manning to testify in front of the grand jury. The Court and a convening authority within the

Department of the Army have also granted Manning full use and derivative use immunity to

ensure that her testimony cannot be used against her. After a one-month postponement at her

request, Manning has been directed to appear in front of the grand jury on March 5, 2019. Four

days before her scheduled appearance, she filed the pending motion to quash the subpoena,

speculating that the questioning will violate her constitutional, common-law, and statutory rights.

The motion should be denied. As a general matter, it is premature. The nature of

Manning's claims requires that she hear the questioning before determining whether it violates

her rights. Until then, she can rely only on conjecture, which is an inadequate basis for a motion

to quash. In addition to being premature, Manning's claims fail on their merits. The subpoena

was lawfully issued in the normal course of the grand jury proceedings. Manning was

subpoenaed because her testimony is highly relevant to an ongoing criminal investigation. Like

any other citizen, Manning must appear before the grand jury as scheduled, and she must testify fully and truthfully as this Court has ordered her to do.

## BACKGROUND

Manning is a former all-source intelligence analyst in the United States Army who may remain subject to military jurisdiction, despite her dishonorable discharge, because of an ongoing appeal relating to the following. In the 2009 to 2010 timeframe, Manning illegally leaked hundreds of thousands of classified documents of the United States Government. She provided the classified documents to one or more agents of WikiLeaks for public disclosure on its website. Manning was arrested for these crimes in May 2010. She was convicted of Espionage Act and other related offenses in a military court-martial. In 2013, Manning was sentenced to 35 years of imprisonment. In January 2017, however, President Barack Obama commuted Manning's sentence so that she would be released in May 2017, after serving approximately 7 years in prison.

In January 2019, Manning was served through counsel with a subpoena to testify on February 5 before a grand jury empaneled in the Eastern District of Virginia. Manning has been further ordered to testify in front of the grand jury by this Court and a general court-martial convening authority.[1] *See* Ex. A; Ex. B. In the compulsion orders, both authorities have granted her full use and derivative use immunity. *See* Ex. A; Ex. B.

At the request of Manning's counsel, the original appearance date was moved back approximately one month. Manning is now scheduled to appear in front of the grand jury on

---

[1] The Court's original immunity order dated January 22, 2019, erroneously referenced "Grand Jury 19-1" in the caption. On February 25, 2019, the Court signed an identical immunity order that simply corrected the caption to reference "Grand Jury 18-4."

2

March 5. Manning filed the pending Motion to Quash on March 1, four days before her scheduled appearance.

## DISCUSSION

The Court "may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c). While the Court oversees that the grand jury uses its powers for legitimate purposes, the Court "should not intervene in the grand jury process absent a compelling reason." *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir. 1983). "The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." *Branzburg v. Hayes*, 408 U.S. 665, 700 (1972). As the Fourth Circuit has explained, "in the context of a grand jury subpoena, the longstanding principle that the public has a right to each person's evidence is particularly strong." *In re Grand Jury Subpoena*, 646 F.3d 159, 164 (4th Cir. 2011) (quoting *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005)). "[T]he grand jury's authority to subpoena witnesses is not only historic, but essential to its task." *Branzburg*, 408 U.S. at 688.

A party faces a heavy burden in moving to quash a grand jury subpoena. "[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). A "presumption of regularity" attaches to the grand jury's proceedings, including its issuance of subpoenas. *See Grand Jury Subpoena*, 646 F.3d at 164. To prevail on a motion to quash, the subpoena recipient "bears the burden of rebutting th[at] 'presumption of regularity.'" *Id.* For the reasons explained below, Manning has failed to carry that burden.

3

**I.      The Grand Jury Subpoena Does Not Infringe on Manning's Fifth Amendment Rights**

The Fifth Amendment right against self-incrimination applies to grand jury proceedings. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). Federal law, however, allows district courts to immunize witnesses and compel them to testify before a grand jury. *See* 18 U.S.C. § 6003(a). Under those circumstances, the witness's testimony cannot be used, or derivatively used, against the witness "in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." *Id.* § 6002. In the military courts, the Rules for Court-Martial (R.C.M.) likewise allow a general court-martial convening authority to grant such use and derivative use immunity. *See* Manual for Courts-Martial, United States, R.C.M. 704 (2016 ed.) (Ex. C.)

It is well established that, where such immunity has been conferred, the government may compel the immunized witness to testify in front of the grand jury, even if her testimony would otherwise incriminate her. *See Kastigar*, 406 U.S. at 462. As the Supreme Court has explained, "the immunity . . . leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege." *Id.* "The immunity therefore is coextensive with the privilege and suffices to supplant it." *Id.*

In light of this precedent, Manning's Fifth Amendment claim fails. Both the Court and a general court-martial convening authority have issued orders compelling her to testify before the grand jury. *See* Ex. A; Ex. B. Both orders expressly grant Manning use and derivative use immunity in connection with her testimony. *See* Ex. A; Ex. B. Under *Kastigar*, those orders eliminate any Fifth Amendment concerns.

Manning's primary argument is that she is still subject to military criminal jurisdiction, where she claims that her grand jury testimony could be used against her. *See* Mot. to Quash 7-10 (Mar. 1, 2019). But the Army's immunity order definitively resolves that issue. It explicitly extends the immunity to court-martial proceedings: "no testimony or other information given by you pursuant to this order or any information directly or indirectly derived from such testimony or other information shall be used against you in a criminal case, *to include any courts-martial*, except as permitted by 18 U.S.C. § 6002." Ex. B (emphasis added). There is no question that Manning's grand jury testimony cannot be used against her in a court-martial proceeding. Accordingly, the alleged threat of military prosecution does not present Fifth Amendment concerns.

The case relied on by Manning, *United States v. Villines*, 13 M.J. 46 (C.M.A. 1982), is distinguishable on that basis. In that case, unlike here, the court refused to immunize the potential witness. *See id.* at 50. In fact, a primary issue on appeal was whether the court erred in refusing to immunize the potential witness so he could testify without Fifth Amendment concerns. *See id.* at 54. Manning, however, has been immunized so she can testify. *Villines* is therefore inapplicable.

Manning also urges (at 3) the Court to quash the subpoena based on "the threat of foreign prosecution" that is "unaffected by an immunity order." But the Supreme Court squarely rejected this argument in *United States v. Balsys*, 524 U.S. 666 (1998). There, the defendant was administratively subpoenaed to testify "about his wartime activities between 1940 and 1944." *Id.* at 669. He refused "to answer such questions, claiming the Fifth Amendment privilege against self-incrimination, based on his fear of prosecution by a foreign nation." *Id.* In ruling that the defendant had to testify, the Supreme Court held that "concern with foreign prosecution

5

is beyond the scope of the Self-Incrimination Clause." *Id.* Manning's concern about potential foreign prosecution, therefore, is no defense to her obligation to comply with the grand jury subpoena. *See, e.g.*, *In re Grand Jury Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197, 208 (7th Cir. 2003) (holding that "any Fifth Amendment claim based on fear of prosecution by a foreign government would provide no defense to contempt in a grand jury proceeding"); *In re Grand Jury Investigation John Doe*, 542 F. Supp. 2d 467, 469 (E.D. Va. 2008) ("The Fourth Circuit has also held that a witness is required to testify under a grant of immunity in the United States even if that witness's testimony would result in a possible criminal conviction in a foreign country.").

In addition to being meritless, Manning's Fifth Amendment claim is premature. A person subpoenaed to testify before the grand jury may not claim the Fifth Amendment "as a blanket defense." *In re Grand Jury Subpoena*, 739 F.2d 1354, 1359 (8th Cir. 1984). "Rather, the witness must make specific objections in response to specific questions." *Id.* Because Manning has not yet appeared before the grand jury, the Fifth Amendment provides no grounds for quashing the subpoena.

## II.    Manning's First Amendment Claims Are Premature and Lack Merit

Even though Manning has not yet appeared before the grand jury, she asserts that the grand jury questioning will infringe upon her First Amendment rights. Specifically, Manning speculates that she may be questioned about her prior disclosures of classified information, for which she was convicted. *See* Mot. to Quash 9-10; Manning Aff. ¶ 4 (Mar. 1, 2019). Manning claims "that questioning . . . will focus on activities protected by the First Amendment such as news gathering." Mot. to Quash 5. According to Manning, such questioning would "disrupt the integrity of the journalistic process by exposing journalists to a kind of accessorial liability for

leaks attributable to independently-acting journalist sources." *Id.* at 12. In addition, Manning speculates that the grand jury may ask her questions about her political associations and activities. *See id.* at 12-13. These claims are wholly without merit.

As a threshold matter, Manning's arguments are premature, and the Court should deny the motion on that basis alone. As Justice Powell explained in *Branzburg v. Hayes*, district courts should address First Amendment concerns only after the witness appears and is subject to "improper or prejudicial questioning." 408 U.S 665, 710 n.* (1972) (Powell, J., concurring). The Fourth Circuit has adopted Justice Powell's concurrence, reaffirming "that witnesses cannot litigate the state's authority to subpoena them 'at the threshold'" based on First Amendment concerns. *In re Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d 229, 233 (4th Cir. 1992). Manning must therefore appear before the grand jury and subject herself to questioning before challenging it on First Amendment grounds. The time for her to raise a First Amendment defense is only in response to a particular question.[2] Until that time, her First Amendment claims are premature. *See In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 592 (E.D. Va. 2006) (holding that an assertion of marital privilege was "premature" and that the witness "must appear and testify, but may assert the privilege in response to specific questions").

Moreover, even assuming the grand jury were to inquire about Manning's prior disclosures of classified information, any motion to quash such inquiry would fail on its merits. Questions about those disclosures would not affect her First Amendment rights. Manning was

---

[2] If Manning asserts a First Amendment challenge to a particular question, the Court should reject her invitation (at 12) to adopt the "substantial relationship" test from *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972). The Fourth Circuit previously recognized that "the Supreme Court has twice declined to apply the substantial relationship test in cases involving subpoenas challenged on First Amendment grounds." *Grand Jury 87-3 Subpoena Duces Tecum*, 955 F.2d at 232. Instead, the Fourth Circuit has adopted a simple balancing test that does not place "any special burden on the government." *Id.* at 234.

an intelligence analyst in the U.S. Army—a government insider who signed a nondisclosure agreement—when she disclosed the classified information. As such, the law is clear that Manning had no First Amendment protections in disclosing the information. *See Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980); *Wilson v. CIA*, 586 F.3d 171, 183-84 (2d Cir. 2009); *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003); *United States v. Morison*, 844 F.2d 1057, 1069-70 (4th Cir. 1988); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975); *United States v. Rosen*, 445 F. Supp. 2d 602, 635-36 (E.D. Va. 2006). Her successful prosecution at the court-martial evidences that she had no First Amendment protections. Quite simply, Manning broke the law in disclosing classified information, and therefore, the grand jury properly could inquire about that offense, just as it properly could inquire about any other potential offense that Manning committed or witnessed.

Similarly, Manning's speculation about the need for her to protect the concerns of journalists would not preclude questioning about her illegal disclosures. It is unclear how any questioning on this topic alone, within the confines of the secrecy of the grand jury proceeding, would "disrupt the integrity of the journalistic process." Mot. to Quash 12. Manning fails to explain how it would. *See Branzburg*, 408 U.S. at 693-94 (emphasizing that the asserted "inhibiting effect" that subpoenas to reporters would have in recruiting sources was "to a great extent speculative"). Regardless, Manning does not have standing to raise the First Amendment rights of journalists.

Even if Manning did have standing, her argument would fail. Reporters enjoy no special solicitude vis-à-vis the grand jury. *See id.* at 690; *United States v. Sterling*, 724 F.3d 482, 499, 505 (4th Cir. 2013). The First Amendment does not "relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions

8

relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). It is "the duty of a citizen, whether reporter or informer, to respond to [a] grand jury subpoena and answer relevant questions put to him." *Branzburg*, 408 U.S at 697; *see also Citizens United v. FEC*, 558 U.S. 310, 352 (2010) ("We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers."); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 946 (7th Cir. 2015) (recognizing that "the First Amendment provides no special solicitude for members of the press"); *In re Greensboro News Co.*, 727 F.2d 1320, 1322 (4th Cir. 1984) (recognizing that "the rights of the news media . . . are co-extensive with and do not exceed those rights of members of the public in general").

Nor is the topic of newsgathering immune from criminal investigation, as Manning's argument suggests (at 5). It is well settled that journalists cannot break the law to obtain information. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514, 532 n.19 (2001) ("It would be frivolous to assert—and no one does in these cases—that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws. Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news." (quoting *Branzburg*, 408 U.S. at 691)); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) ("The First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office."). Criminal acts committed by citizens and journalists alike in obtaining information is a proper subject of inquiry by a grand

9

jury. For all of these reasons, even assuming that Manning were asked about her disclosure of classified information, the First Amendment would not preclude the inquiry.

In the end, the government is confident that its questioning will pose no legitimate First Amendment concerns. As will become clear during the questioning, Manning's testimony is highly relevant to an ongoing criminal investigation. The questioning will be properly tailored to that investigation. Under the Supreme Court's and Fourth Circuit's precedent, it will not violate Manning's First Amendment rights.

**III.  The Grand Jury Subpoena Is Not Improper or Abusive**

In addition to her constitutional claims, Manning alleges that the grand jury subpoena was issued for improper purposes. Throughout her papers, she offers a series of theories maligning the government's motives: that the purpose of the subpoena is to harass her, to retaliate against her, to set up a perjury trap for her, or to obtain otherwise "inaccessible" information. *See* Mot. to Quash 17-20. She has no evidence, however, of any foul play at the grand jury. Her arguments are pure conjecture.

Manning's allegations fail to rebut the presumption of regularity that attaches to grand jury subpoenas. "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498 U.S. 292, 300-01 (1991). The "recipient who seeks to avoid compliance" bears the burden of showing otherwise, *id.* at 301, and has the "initial task of demonstrating . . . some valid objection to compliance," *In re Grand Jury Matter (Special Grand Jury Narcotics December Term, 1988, Motion to Quash Subpoena)*, 926 F.2d 348, 350 (4th Cir. 1991) (quoting *R. Enters.*, 498 U.S. at 305 (Stevens, J., concurring in part and concurring in the judgment)). It is well established that mere conjecture and speculation about the government's motives do not satisfy that burden. *See*

*United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) (holding that "speculations about possible irregularities in the grand jury investigation were insufficient to overcome the presumption that this investigation was for a proper purpose"); *United States v. Bellomo*, No. 02-CR-140 (ILG), 2002 WL 1267996, at \*2 (E.D.N.Y. Apr. 10, 2002) (rejecting a motion to quash a subpoena because there was no "particularized proof that the government acted arbitrarily and for an improper purpose"); *United States v. Bin Laden*, 116 F. Supp. 2d 489, 493 (S.D.N.Y. 2000) (recognizing that "speculations about the Government's motives are insufficient to overcome the presumption of regularity"); *United States v. McVeigh*, 896 F. Supp. 1549, 1557-58 (W.D. Okla. 1995) ("Such rank speculation or supposition is insufficient to overcome the presumption of regularity that attaches to the grand jury's acts or to raise a substantial factual issue as to the purpose for which the subpoena and directive were issued."). Since that is all she offers, Manning has failed to carry her burden.

On the contrary, the circumstances reflect that the issuance of the subpoena to Manning was for a legitimate purpose. Manning was validly convicted of high-profile unauthorized disclosure offenses after she committed one of the largest leaks of classified information in American history. Even assuming that Manning is correct that she will be asked about those offenses, such activity would fall squarely within the purview of a legitimate grand jury investigation.

The fact that the Department of Justice requested immunity for Manning further reinforces that the subpoena was for a legitimate purpose. The decision to grant a witness immunity is not taken lightly. Under federal law, the Department must request use and derivative use immunity before the court can grant it. *See* 18 U.S.C. § 6003(a). Such an application must be approved by statutorily designated leadership within the Department, and it

11

can be approved only when "the testimony or other information from such individual *may be necessary to the public interest.*" *Id.* § 6003(b) (emphasis added). All of those steps were followed here. In fact, the Court's immunity order reflects that it was "satisfied that the testimony or other information from [Manning] may be necessary in the public interest." Ex. A. The solemn decision to provide Manning with immunity reflects the importance of her testimony to an ongoing investigation.

The government, moreover, offered to meet Manning in advance of the grand jury to ask the questions and obtain answers in the presence of her attorneys. This would have given Manning insight into the proper purpose of the subpoena. While Manning had the right to decline that voluntary meeting, her effort to quash the subpoena on the basis of conjectured improprieties and ulterior motives is nothing more than an attempt to unnecessarily "saddle [the] grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *R. Enters.*, 498 U.S. at 298-99 (quoting *United States v. Dionisio*, 410 U.S. 1, 17 (1973)).

It is worth noting that Manning's primary arguments are premised on a false and misleading factual premise. In her papers, Manning suggests that she "has already given exhaustive testimony" at her court-martial proceeding. Mot. to Quash 17. Manning further represents that, "[a]t that time, the military, in consultation with the Department of Justice, cross-examined her and elicited testimony from her." *Id.* at 3.

These representations do not withstand scrutiny. During her court-martial, Manning pleaded guilty to some of the charges. In connection with her guilty plea, the military judge conducted a "providence inquiry"—"a more elaborate relative of the Rule 11 proceeding under

12

the Federal Rules of Criminal Procedure" that serves to "ensure that a plea is voluntary and that there is a factual basis for the plea." *Partington v. Houck*, 723 F.3d 280, 282-83 (D.C. Cir. 2013). The Rules for Courts-Marital provided that "[t]he military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Manual for Courts-Martial, United States, R.C.M. 910(e) (2012 ed.) (Ex. D). As the notes to the rule explain, "[t]he accused need not describe from personal recollection all the circumstances necessary to establish a factual basis for the plea. Nevertheless the accused must be convinced of, and able to describe all the facts necessary to establish guilt." *Id.*

The government has attached the colloquy from Manning's providence inquiry. *See* Ex. E. As it reflects, Manning first read a voluntary statement providing a factual basis for her plea. *See* Ex. E, at 6739-85. That statement was also entered as an exhibit in the record. *See* Ex. F. Then, the court questioned her specifically about the factual basis for certain elements to which she was pleading guilty. *See id.* Ex. E, at 6786-916.

Thus, Manning's representation that she gave exhaustive testimony and was "cross-examined" is misleading. Manning chose what facts to admit to support her guilty pleas. And the military court engaged in a limited inquiry to ensure the factual basis for the pleas. There is no evidence that the Department of Justice was involved in the military court's questioning of her.

## IV. Manning Has Failed to Demonstrate that She May Have Been Subjected to Unlawful Electronic Surveillance

Manning claims that she may have been subjected to unlawful electronic surveillance. While Manning recognizes that it is premature to request a hearing to determine whether it

13

affected the grand jury subpoena or any questioning, she insists that the government must affirm or deny that such surveillance occurred. *See* Mot. to Quash 21, 23. As explained below, Manning's claim is meritless.

Upon a claim of a party aggrieved by unlawful electronic surveillance under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title III"), the government is required by 18 U.S.C. § 3504(a)(1) to affirm or deny the occurrence of the alleged unlawful act. Specifically, the statute provides as follows:

> (a) In any trial, hearing, or other proceeding in or before any court [or] grand jury
> . . . of the United States—
>
> (1) upon a claim by a party aggrieved that evidence is inadmissible because it
> is the primary product of an unlawful act or because it was obtained by the
> exploitation of an unlawful act, the opponent of the claim shall affirm or deny
> the occurrence of the alleged unlawful act.

18 U.S.C. § 3504(a)(1). An "unlawful act" includes the use of electronic surveillance—as defined in Title III—in violation of the Constitution or the laws of the United States. *Id.* § 3504(b).

Under this statute, Manning must satisfy a two-part test. First, to establish standing, she must make a "claim" that there actually was electronic surveillance and that she was a party "aggrieved" by its use. *See United States v. Apple*, 915 F.2d 899, 905 (4th Cir. 1990). Second, she must show a plausible causal link between the electronic surveillance she alleges to have occurred and the evidence that the government intends to use against her in the grand jury. *See In re Grand Jury Investigation, 2003R01576*, 437 F.3d 855, 858 (9th Cir. 2006); *United States v. Robins,* 978 F.2d 881, 887 (5th Cir. 1992). Only if she satisfies both conditions may the government be required to affirm or deny any surveillance. Manning has failed to satisfy either.

## A. Manning Does Not Have Standing.

As the Fourth Circuit has explained, "a party claiming to be the victim of illegal electronic surveillance must first demonstrate that his interests were affected before the government's obligation to affirm or deny is triggered." *Apple*, 915 F.2d at 905. "This 'standing' requirement is met if a definite 'claim' is made by an 'aggrieved party.'" *Id.* Manning has failed to make a definite claim or demonstrate that she is an aggrieved party.

### 1. Manning has not made a sufficient "claim" under § 3504.

To satisfy the "claim" requirement under § 3504, the Fourth Circuit has held that a party must make "a positive statement that illegal surveillance has taken place." *Id.* Equivocal statements are insufficient. The "mere allegation that such surveillance 'may' have occurred does not warrant any response from the government." *In re Grand Jury Proceedings*, 831 F.2d 228, 230 (11th Cir. 1987). Similarly, "a motion alleging only a 'suspicion' of such surveillance, or that the movant has 'reason to believe' that someone has eavesdropped on his conversations, does not constitute a positive representation giving rise to the government's obligation to respond." *Robins*, 978 F.2d at 886.

Manning never positively states in her papers that illegal electronic surveillance took place. Instead, Manning makes only equivocal assertions. She consistently qualifies her statements with language that she "believed" or had "reason to believe" that illegal surveillance occurred. *See, e.g.*, Mot. to Quash 5 (asserting Manning "has reason to believe" that she was subject to unlawful electronic surveillance); *id.* at 20 (asserting that the "facts tend[] to suggest that she . . . ha[s] been subjected to unlawful electronic surveillance"); *id.* (asserting a "reason to believe" she was subject to electronic surveillance); *id.* at 21 ("It would be difficult to deny that a great deal of electronic surveillance has taken place and been directed at Ms. Manning.");

15

Manning Aff. ¶¶ 16-17 (stating she "believ[ed]" and had "reason to believe" unlawful electronic surveillance had taken place). In the absence of a positive statement that unlawful electronic surveillance actually occurred, Manning's motion under § 3504 must be denied.

### 2. *Manning has not sufficiently alleged that she was an aggrieved party.*

The standard for establishing that she is an aggrieved party is even "more demanding" than the requirements for making a claim. *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 590 (E.D. Va. 2006). To satisfy this requirement, Manning must "make a prima facie showing that [s]he was 'aggrieved' by the surveillance; that is, that [s]he was a party to an intercepted communication, that the government's efforts were directed at [her], or that the intercepted communications took place on [her] premises." *Apple*, 915 F.2d at 905. "This critical showing may not be based on mere suspicion; it must have at least a 'colorable basis.'" *Id*.

Manning's allegations fall decidedly short of satisfying this "demanding standard." *Grand Jury Investigation*, 431 F. Supp. 2d at 591 n.14. Her allegations, at most, suggest that she was subjected to *physical* surveillance (i.e., the alleged van outside of her house and the alleged men on the Amtrak). None of the allegations provides a colorable basis that the government was intercepting her communications. In that regard, Manning has not offered anything more than "mere suspicion" to suggest that she was subjected to illegal electronic surveillance.

The Fourth Circuit's decision in *United States v. Apple* demonstrates how far short Manning's allegations fall. There, a defendant stated that he called a third party whose phone was tapped. *See Apple*, 915 F.2d at 906. The defendant specified where he called the third party—in Fluvanna County, Virginia. *See id.* The defendant approximated when he called the third party—in May, June, or July 1985. *See id.* And the defendant stated that he "spoke 'regularly' on the telephone" with the third party. *Id.* The Fourth Circuit held that this showing

16

was nevertheless insufficient to establish that the defendant was an aggrieved party because the defendant "never averred that he completed telephone calls to the number known to have been tapped during the period that surveillance took place." *Id.* at 907. The defendant's "failure to aver that he was involved in telephone conversations on the tapped line [was] . . . fatal to his claim." *Id.*

Manning's allegations are less compelling than the *Apple* defendant's claim. Unlike the *Apple* defendant, Manning cannot clarify when, where, and on what medium her communications were allegedly intercepted. Whereas the *Apple* defendant specified that the intercepts involved telephone communications, Manning speculates that she was intercepted on two cell phones and an email address. *See* Manning Aff. ¶ 18. Whereas the *Apple* defendant pinpointed the area in which the wiretap occurred, Manning claims that she thought she was intercepted in New York, Maryland, and San Francisco. *See id.* Whereas the *Apple* defendant specified that the intercepts occurred during a three-month timeframe, Manning broadly states that the intercepts of her various devices occurred over nine months. *See id.* Manning's kitchen-sink allegations underscore that she has no idea whether electronic surveillance occurred and, if so, whether she was subjected to it. As a result, the Court has even less of a basis to conclude that she is an aggrieved party than the Fourth Circuit had in *Apple*.

## B.    Manning Has Failed to Show a Connection Between the Grand Jury Proceedings and Any Intercepted Electronic Communications.

Section 3504 also contains an express requirement that there be a connection between the unlawful surveillance and the questions asked or evidence used at a grand jury proceeding. *See* 18 U.S.C. § 3504(a)(1) (requiring a "claim . . . that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful

17

act"). The statute, after all, is meant "to provide procedures by which a witness may attempt to demonstrate that the questions posed to him fail to comply with the mandate of section 2515," a provision that "proscribes the use in an official proceeding of evidence tainted by illegal surveillance." *In re Grand Jury Matter*, 906 F.2d 78, 91 (3d Cir. 1990). It "is not a discovery tool to be used to determine the existence or validity of wiretaps completely unrelated in time or substance to the on-going proceeding." *Id.* at 93.

The Ninth Circuit's decision in *In re Grand Jury Investigation, 2003R01576*, 437 F.3d 855 (9th Cir. 2006), is instructive. There, a district court held a grand jury witness in contempt after he refused to answer questions posed to him. *Id.* at 857. The witness asserted § 3504 as a defense, claiming that "the government did not meet its burden of proof in responding to his allegations that he ha[d] been the subject of illegal surveillance." *Id.* The Ninth Circuit disagreed. While it concluded that he sufficiently showed he was an aggrieved party, the court determined that he did not demonstrate "that the government's questions were the 'primary product' of unlawful surveillance or were 'obtained by the exploitation' of any unlawful surveillance." *Id.* at 858 (quoting § 3504(a)(1)). The Ninth Circuit emphasized that there must be at least "an arguable causal connection between the questions being posed to the grand jury witness and the alleged unlawful surveillance." *Id.* The court noted that "[t]he nature of the questions posed to [the witness] before the grand jury [was] so generic that the questions d[id] not suggest any reliance on surveillance of any sort." *Id.*

In her papers, Manning recognizes that she cannot demonstrate that the subpoena or any questioning will be based on unlawful electronic surveillance. In fact, she recognizes that "it is well-settled that electronic surveillance is relevant to a grand jury proceeding only where it is unlawful, and directly connected to [the] subpoena or questions." Mot. to Quash 23. And she

18

acknowledges that "it is not at this time necessary to request such a hearing." *Id.* Instead, she asks the Court to compel the government to affirm or deny any such surveillance. *Id.*

The text of the statute undermines Manning's request. Under the clear language of the statute, the government does not have to affirm or deny until Manning shows that the subpoena or questioning was a "primary product" of unlawful surveillance or "was obtained by the exploitation" of unlawful surveillance. § 3504(a)(1). She has offered nothing to suggest that the subpoena was the product of unlawful surveillance. And, given that Manning has not appeared before the grand jury, she has no basis for arguing that the questioning is a product of unlawful surveillance. In short, Manning has failed to assert a connection between the alleged unlawful surveillance and the grand jury proceedings. As a result, her motion must be denied. *See also In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 196-200 (4th Cir. 2010) (holding that a grand jury enforcement action is not the proper forum for litigating whether surveillance violated the Fourth Amendment or FISA).

## V.   Manning Has No Right to Disclosure of "Ministerial" Grand Jury Records

Manning is not entitled to so-called "ministerial" records of the grand jury. Federal Rule of Criminal Procedure 6(e) codifies the "long-established policy of maintaining the secrecy of grand jury proceedings." *United States v. Penrod*, 609 F.2d 1092, 1098 (4th Cir. 1979). The rule sets forth the exceptions under which the Court may "lift the veil of secrecy." *See* Fed. R. Crim. P. 6(e)(3)(E); *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004) (addressing exceptions under prior version of Rule 6(e)).

Manning does not point to any of Rule 6(e)'s exceptions as allowing for a right to the purportedly "ministerial" records she seeks. Instead, she cites (at 25) the Ninth Circuit's opinion in *In re Special Grand Jury (for Anchorage, Alasaka)*, 674 F.2d 778 (9th Cir. 1982), where the

19

court held that members of the public "have a right, subject to the rule of grand jury secrecy, of access to the ministerial records" of the grand jury. *Id.* at 781. Courts in this district, however, have rejected that holding. "[T]here is no rule in the Fourth Circuit that some grand jury records may be labeled as ministerial and disclosed to the public if they do not fall within the bounds of Rule 6(e) or otherwise offend the goals of the grand jury secrecy doctrine." *Nguyen*, 314 F. Supp. 2d at 618.

Manning's attempt to invoke (at 25) cases involving the public's "general right of access to court records" fares no better. Even the court in *In re Special Grand Jury* recognized that the common-law right of access to court records was "subject to the rule of grand jury secrecy." 674 F.2d at 781; *see also Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218 n.9 (1979) (describing grand jury secrecy as dating to the 17th century and "imported into our federal common law" as "an integral part of our criminal justice system").

Moreover, Manning has not even attempted to meet the standard required for disclosure of grand jury records under Rule 6(e)(3)(E)(i)—the only exception even potentially applicable to someone in Manning's shoes. *See* Fed. R. Crim. P. 6(e)(3)(E)(i) (allowing disclosure of grand jury matter "preliminary to or in connection with a judicial proceeding"). A party seeking to lift the veil of secrecy under that rule must make a "strong showing of a particularized need for grand jury materials." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). Specifically, a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas*, 441 U.S. at 222. Manning has not identified any other relevant judicial proceeding, or otherwise addressed any element of the *Douglas* test. *See also Nguyen*, 314 F. Supp. 2d at 616 n.6 ("Invocation of

20

general constitutional rights does not qualify as a particularized need justifying disclosure.").

She is therefore not entitled to any records of the grand jury in this case.

## VI.   Manning Has No Right to Have the Court Instruct the Grand Jury as She Demands

"Traditionally the grand jury has been accorded wide latitude to inquire into violations of

criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may

determine alone the course of its inquiry." *United States v. Calandra*, 414 U.S. 338, 343 (1974).

The Fourth Circuit has thus "repeatedly recognized that district courts should refrain from

intervening in the grand jury process absent compelling evidence of grand jury abuse" and in

light of the "presumption of regularity" attached to grand jury proceedings. *United States v.*

*Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016). Motions to instruct the grand jury "have uniformly

met with no success." *In re Balistrieri*, 503 F. Supp. 1112, 1114 (E.D. Wis. 1980); *see also*

*United States v. Zangger*, 848 F.2d 923, 935 (8th Cir. 1988) ("The prosecutor is under no

obligation to give the grand jury legal instructions.").

Despite the presumption of regularity, Manning proposes (at 27) that the Court provide a

novel set of grand jury instructions related to, among other things, "the power and authority of

the grand jury," Manning's purported Fifth Amendment rights, "and the legal effect of an

immunity grant." Manning, however, fails to cite a single case in the Fourth Circuit that

supports the Court instructing the grand jury about such matter, because no such case exists. Nor

has Manning offered a shred of evidence of grand jury abuse that would rebut the presumption of

regularity. *See Alvarado*, 840 F.3d at 189. Manning asserts (at 27) that her proposed

instructions are necessary "because the possibility of civil contempt looms over Ms. Manning."

But that possibility hangs over every grand jury witness and, therefore, does nothing to rebut the

presumption of regularity or counsel in favor of Manning's proposed instructions.

21

Manning's sole support for her proposed instruction is the Ninth Circuit's opinion in

*United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). The court in *Alter,* however, did not

consider the propriety of the grand jury witness's proposed instructions. Indeed, the court stated

that the proposed instructions were not even given by the district court. *See id.* at 1029 ("The

record supplies no basis for us to infer that he was prejudiced . . . by the refusal to give his

requested instructions to the grand jury.")

## VII. Manning Has No Right to Discovery from the Government Prior to Her Grand Jury Testimony

There is no rule of criminal procedure that obligates the government to produce discovery

to a grand jury witness prior to her testimony. Manning cites (at 28) out-of-circuit cases

supporting the proposition that, in some circumstances, a grand jury witness may be entitled to

the transcript of her grand jury testimony after she testifies. But as expressly acknowledged in

the cases Manning cites, that is *not* the law in the Fourth Circuit. *See In re Grand Jury*, 490 F.3d

978, 987 (D.C. Cir. 2007) (describing circuit split and that the Fourth Circuit "held that grand

jury witnesses are not entitled to obtain copies of their transcripts"). In the Fourth Circuit,

witnesses are not entitled to their own grand jury transcripts absent a showing that a

"particularized need" outweighs the policy of grand jury secrecy. *Bast v. United States*, 542 F.2d

893, 896-97 (4th Cir. 1976). Other than speculating that she might commit perjury if she

testifies, Manning does not event attempt to make such a showing.

In any event, the out-of-circuit cases Manning cites address disclosure of a grand jury

transcript *after* a witness testifies before the grand jury. Contrary to Manning's suggestion, those

cases do not provide a general right to discovery of a witness's prior statements before the

witness appears. *See In re Sealed Motion*, 880 F.2d 1367, 1370-73 (D.C. Cir. 1989) (finding

22

general right to transcript of a witness's own testimony absent countervailing interests); *In re Grand Jury*, 490 F.3d at 990 (grand jury witness entitled to review transcript of his own testimony "in private at the U.S. Attorney's Office or a place agreed to by the parties or designated by the district court"); *In re Russo*, 53 F.R.D. 564, 569 (C.D. Cal. 1971) ("The question . . . is the extent to which providing a witness with a transcript of his own grand jury testimony would be inconsistent with valid reasons for secrecy."); *Gebhard v. United States*, 422 F.2d 281, 289 (9th Cir. 1970) (considering whether it was error for petit jury in perjury case "to hear the complete transcript of the defendant's testimony before the grand jury"); *United States v. Nicoletti*, 310 F.2d 359 (7th Cir. 1962) (holding that the "two witness" rule was not applicable in a perjury case).

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to quash.

23

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____

Tracy Doherty-McCormick
First Assistant United States Attorney

Gordon D. Kromberg
Kellen S. Dwyer
Thomas W. Traxler
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3700
Facsimile (703) 299-3980
Thomas.traxler@usdoj.gov

Matthew R. Walczewski
Nicholas Hunter
Trial Attorneys, National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone (202) 233-0986
Facsimile (202) 532-4251
Matthew.walczewski@usdoj.gov

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2019, I caused the foregoing document to

be sent to the following via electronic mail:

Moira Meltzer-Cohen
Attorney at Law
Mo_at_Law@protonmail.com

Thomas W. Traxler
Assistant United States Attorney

25