1

1                UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                  ALEXANDRIA DIVISION

3 IN RE:  GRAND JURY SUBPOENA )  Case 1:19-dm-00003
  FOR CHELSEA MANNING       )
4                      )  Alexandria, Virginia
                     )  March 5, 2019
5                      )  9:34 a.m.
                     )  Pages 1 - 32
6

7             TRANSCRIPT OF UNDER SEAL HEARING

8         BEFORE THE HONORABLE CLAUDE M. HILTON

9          UNITED STATES DISTRICT COURT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1   APPEARANCES:

 2   FOR THE UNITED STATES OF AMERICA:

 3        THOMAS W. TRAXLER, ESQUIRE
          GORDON D. KROMBERG, ESQUIRE
 4        TRACY D. MCCORMICK, ESQUIRE
          KELLEN S. DWYER, ESQUIRE
 5        OFFICE OF THE UNITED STATES ATTORNEY
          2100 Jamieson Avenue
 6        Alexandria, Virginia  22314
          (703) 299-3700
 7
          NICOLAS HUNTER, ESQUIRE
 8        U.S. DEPARTMENT OF JUSTICE
          NATIONAL SECURITY DIVISION
 9        600 E Street, N.W.
          Washington, D.C.  20004
10        (202) 307-5176

11   FOR CHELSEA E. MANNING:

12        SANDRA C. FREEMAN, ESQUIRE
          LAW OFFICE OF SANDRA FREEMAN
13        5023 West 120th Avenue, Suite 280
          Broomfield, Colorado  80020
14        (720) 593-9004

15        MOIRA MELTZER-COHEN, ESQUIRE, PRO HAC VICE
          LAW OFFICE OF MOIRA MELTZER-COHEN
16        277 Broadway, Suite 1501
          New York, New York  10007
17        (347) 248-6771

18        CHRISTOPHER LEIBIG, ESQUIRE
          LAW OFFICE OF CHRISTOPHER LEIBIG
19        114 North Alfred Street
          Alexandria, Virginia  22314
20        (703) 683-4310

21

22

23

24

25
```

1           THE CLERK:  Case No. 19-3, *In Re Grand Jury*

2  *Subpoena Regarding Chelsea Manning.*

3           MR. TRAXLER:  Good morning, Your Honor.

4  Tommy Traxler on behalf of the United States.  With me

5  at counsel table is Gordon Kromberg, Tracy McCormick,

6  Kellen Dwyer, and Nicolas Hunter also on behalf of the

7  United States, Your Honor.

8           THE COURT:  All right.

9           MR. LEIBIG:  Good morning, Judge.  Chris

10  Leibig for Ms. Manning.  With me is Sandra Freeman and

11  Moira Meltzer-Cohen.

12           As an initial matter, Judge, I would ask that

13  you grant my motion to move Ms. Meltzer-Cohen *pro hac*

14  *vice* for this matter.

15           THE COURT:  All right.  The motion is

16  granted.

17           MR. LEIBIG:  Thank you, sir.

18           MS. FREEMAN:  Good morning, Your Honor.

19  Sandra Freeman on behalf of Ms. Manning.

20           As a preliminary matter, I would request the

21  Court first take up our motion to unseal the pleadings,

22  and I would join that with a motion to open the

23  courtroom to the public.

24           THE COURT:  All right.

25           MS. FREEMAN:  Yes, sir.  I just wanted to

1  make sure the Court received the pleadings filed

2  yesterday and the motion to unseal the pleadings.

3              THE COURT:  I have.

4              MS. FREEMAN:  Judge, the matter before the

5  Court today is not a matter occurring before the grand

6  jury as we are not in front of the grand jury.  The

7  pleadings filed on Ms. Manning's behalf by counsel are

8  not subject to the secrecy provisions in Rule 6(e), and

9  Ms. Manning, as a witness, is not contemplated by the

10 secrecy rules of 6(e).

11             The pleadings that we filed before you,

12 specifically the motion to quash and the motion to

13 unseal, do not contain any information about what has

14 occurred before the grand jury.  The United States

15 Attorneys have not disclosed any of the information

16 that they are prohibited from disclosing.  The

17 information that we have put before the Court within

18 our pleadings and the information that we anticipate

19 arguing to you today are all matters that are already

20 within the sphere of public knowledge and that are not

21 protected by the secrecy provisions within the law.

22             The motion to quash in and of itself is not

23 something that is subject to the rules of grand jury

24 secrecy.

25             We would ask the Court to authorize

1  disclosure of the pleadings filed as to Ms. Manning

2  with the exception, of course, of Ms. Manning's

3  declaration that is sealed and secret pursuant to the

4  personal identifying detail provisions in the rules

5  regarding redaction.

6        The rules around grand jury secrecy, first, I

7  think are explicit in that they say that no one other

8  than those listed in 6(e)(2)(B) shall be required to

9  adhere to the rules of secrecy.  The persons are

10  identified, such as the attorneys for the government

11  and court personnel.  Of course, those people are

12  subject to the provisions, and they are explicitly

13  identified.

14        It's clear from the rule, from the advisory

15  committee notes to the rule, and from case law from

16  various circuits interpreting the rule that the witness

17  herself, the pleadings that we have filed that do not

18  contain nonpublic information regarding the nonpublic

19  proceedings before the grand jury are not subject to

20  those secrecy provisions.

21        What we are asking today is that the Court

22  authorize unsealing of the motion to quash filed on

23  Ms. Manning's behalf, authorize unsealing of the motion

24  to unseal, and we would further ask the Court open the

25  courtroom to the public for arguments on these matters.

1          Of course, the public has no right to be

2   present for the grand jury itself.  The public and

3   press have no First Amendment right of access.  We are

4   not requesting that the public or the press or even

5   counsel have any access to the actual proceedings

6   before the grand jury.

7          Our request here is for these proceedings

8   specifically before you regarding whether or not to

9   quash Ms. Manning's subpoena, regarding whether or not

10  to unseal the pleadings, that those matters the public

11  does have a particularized interest and a right of

12  access to be present.  Ms. Manning has a right for the

13  public to be able to be present for specifically these

14  arguments that do not involve protected information and

15  material.

16         There are questions and tests set out.  We

17  have to show a particularized need and that those

18  materials were present and opening of the courtroom

19  would be needed to avoid injustice at other

20  proceedings.  This is another proceeding being

21  contemplated by the rule.  We are not asking the Court

22  to open up the proceedings of the grand jury itself.

23  We are asking that these proceedings particularly be

24  opened.  The request has been narrowly tailored as to

25  these pleadings.

1          So based on all of that, we would ask that
2   the Court be opening the pleadings and the public
3   information, the information that has already been
4   disclosed and revealed by both the government and by
5   socialists throughout the past decade, to be accessible
6   by the public and the hearing as well.
7               THE COURT:  All right.
8               MR. TRAXLER:  Thank you, Your Honor.
9          As a preliminary matter, I want to observe
10  that the government has not received a copy of the
11  motion to unseal.  So we don't have the benefit of
12  responding to the specific arguments that were in that
13  pleading.  But instead, we just heard about it today
14  from Ms. Manning's counsel.  We would oppose
15  Ms. Manning's request to open the courtroom and to
16  unseal the pleadings in this matter.
17          First, I want to take up opening the
18  courtroom.  Rule 6(e)(5), Your Honor, states, and I
19  quote, that aside from criminal contempt proceedings,
20  the Court must close any hearing to the extent
21  necessary to prevent disclosure of a matter occurring
22  before a grand jury.
23          We would submit, Your Honor, that this entire
24  hearing concerns a matter occurring before a grand
25  jury, and that is a subpoena that the grand jury has

1 issued for Ms. Manning to testify in connection with a

2 grand jury investigation.  That investigation is

3 ongoing.  It's hard to imagine, Your Honor, how we can

4 have an effective hearing this morning without

5 discussing or potentially discussing matters that are

6 occurring before a grand jury.

7         Moreover, the pleadings and the hearing

8 directly involve matters occurring before the grand

9 jury.  Rule 6(e) would preclude the government from

10 confirming Ms. Manning's subpoena, a matter occurring

11 before a grand jury; Ms. Manning's immunity order,

12 another order that was issued in connection with a

13 matter occurring before a grand jury; and other items.

14         So practically speaking, Your Honor, we

15 wouldn't be able to have an effective hearing if the

16 government is constantly evaluating under Rule 6(e)

17 whether it can say certain things because the media is

18 present in the courtroom.  So we would submit, Your

19 Honor, that Rule 6(e)(5) answers the question this

20 morning, and that is the hearing, because it addresses

21 a matter occurring before the grand jury, should be

22 closed.

23         With respect to sealing, Your Honor, I would

24 direct the Court's attention to the following

25 subsection of Rule 6(e), and that's Rule 6(e)(6).  That

1  specifically states that records, orders, and subpoenas

2  relating to grand jury proceedings must be kept under

3  seal to the extent and as long as necessary to prevent

4  the unauthorized disclosure of a matter occurring

5  before a grand jury.

6       Your Honor, at the outset, we would submit,

7  having not had the benefit of receiving the pleading

8  that Ms. Manning filed yesterday, that the Court should

9  defer ruling on unsealing at this time.  There is no

10  reason to go to a rushed judgment today.  There is too

11  much at stake, and whatever the Court's ruling is, it

12  would likely be appealed to the Fourth Circuit.

13       Instead, let the parties brief this issue in

14  due course, and that would give the parties an

15  opportunity to work through these issues.  It would

16  also give the Court an opportunity to make a considered

17  judgment in light of full briefing and the parties'

18  views on the issue.

19       But if the Court is inclined to rule today,

20  we would oppose unsealing all of the pleadings and

21  papers that they request be unsealed.

22       Just to reiterate, the fact that Ms. Manning

23  has been subpoenaed to testify in an ongoing grand jury

24  proceeding is a matter occurring before the grand jury.

25  Again, the fact that she's been granted immunity is

1  directly contemplated in the advisory notes of

2  Rule 6(e)(5) as being a matter that should be sealed,

3  as being paper that should be sealed, and is a matter

4  occurring before the grand jury.  Therefore, the briefs

5  that talk about that immunity order and the subpoena,

6  those are related to an ongoing grand jury proceeding

7  and should be sealed.

8            Thank you, Your Honor.

9            THE COURT:  All right.  Well, I find that

10 Rule 6(e)(5) and Rule 6(e)(6) require that we go

11 forward with these matters at this point in time under

12 seal and also that the courtroom be closed for the

13 hearing.

14           The government hasn't had time to respond to

15 your brief.  I will give time for you all to look

16 further at this issue as to what ought to be unsealed

17 or not unsealed.

18           As far as the hearing on the motion to quash

19 this grand jury subpoena, that's a matter before the

20 grand jury, and we'll go forward with the courtroom

21 closed.

22           MS. MELTZER-COHEN:  Good morning, Your Honor.

23 So thank you for hearing us this morning, Your Honor.

24           We understand that this is a robust and

25 complicated motion, so I will try to simplify it.  This

1    is an omnibus motion.  The motion to quash is an

2    omnibus motion that contains several smaller motions

3    within it, many of which contain arguments that

4    interact with each other or are somewhat overlapping.

5            Each of the quash motions in our omnibus

6    motion represents an independent legal basis that would

7    constitute just cause for objecting to the subpoena

8    generally.  Each of these quash motions might also

9    constitute grounds to object to individual questions

10   that would be propounded before the grand jury.

11           So to the extent that the government has said

12   that some of these motions may be premature, they're

13   not entirely incorrect because it is true that we can't

14   litigate these issues today with respect to questions

15   that we have not yet heard.  But these motions may be

16   appropriate both today and then, again, revisited after

17   Ms. Manning hears questions.

18           THE COURT:  Aren't you conceding the

19   government's position in regard to what questions may

20   be asked?  I don't know how I can rule on that.  I have

21   no idea what questions are there.  You don't have any

22   idea what questions are there.  Clearly, we can't go

23   forward with today; can we?

24           MS. METZLER-COHEN:  Judge, I'm sorry.  Your

25   Honor, what I'm suggesting and I believe what the law

1  says is we can object to the subpoena generally, and we

2  can also, you know, in a later hearing object on

3  similar or the same grounds to individual questions.

4        So what's not premature here are the

5  following issues:  With regard to Ms. Manning's Fifth

6  Amendment privileges, it would appear that the

7  government has worked to moot this issue by not only

8  securing an immunity order from you but by securing a

9  parallel order from the military.

10       So, first, as we said in the motion, we do

11  have concerns about a perjury trap.  Ms. Manning gave

12  extensive and truthful testimony at her court marshal.

13  If you look at the document that's appended to the

14  government's reply, you will, in fact, see the

15  painstaking detail with which Ms. Manning accounted for

16  each instance of her conduct.  I mean down to file

17  names, Your Honor.

18       So if the government intends to question her

19  about any of the same matters, which the reply seems to

20  suggest they do, she's sort of faced with the choice of

21  reiterating her previous answers, which the government

22  appears not to accept, or being untruthful, which she

23  refuses to do.

24       Ms. Manning has not given and would not give

25  untruthful testimony.  However, since her prior

UNDER SEAL

1  testimony made clear that she acted alone and since we

2  have been advised that she is herself not a target in

3  this investigation, it would appear that the government

4  may harbor an interest in undermining her previous

5  testimony since it doesn't inculpate anyone else who

6  might be a target.

7           THE COURT:  Aren't you getting back where we

8  were just a minute ago?  You're saying if or what.

9  There's no way of knowing this.  This is just entire

10  speculation.  I can't base a ruling on that.

11           MS. METZLER-COHEN:  Okay.  Judge, I think

12  I -- I think it's important for me to make the record

13  of the argument here.  So if you'll --

14           THE COURT:  Well, you have that in your

15  papers, but go ahead and make your argument quickly.

16  It seems to me we're right at the same ground we were

17  before.

18           MS. METZLER-COHEN:  Okay.  I will attempt to

19  be clear and quick.

20           THE COURT:  Well, that is, we can't base a

21  decision on that.

22           MS. METZLER-COHEN:  Okay.

23           THE COURT:  I mean, you can conjure up

24  anything, or I could too.  Who knows whether that's

25  going to happen or not?

1           MS. METZLER-COHEN:  Well, Judge, there are

2   questions as to the subpoena as a whole that I think

3   deserve to be heard and are ripe for review today.  So,

4   you know, if in case the subpoena has been propounded

5   with an interest in either coercing perjury or

6   attempting to build a case against Ms. Manning for

7   perjury, you know, in order to undermine her as a

8   potential defense witness, since the immunity order

9   can't immunize that potential perjury, she retains an

10  interest in not testifying.

11          I do also want to clarify for the record that

12  the government correctly repeated my statement of the

13  law with respect to foreign prosecution.  It is

14  absolutely the case that the Supreme Court ruled in

15  *Balsys*, which both of us cite, that the immunity order

16  and immunity orders coextensive with the Fifth

17  Amendment privilege and that that privilege extends

18  only to domestic and not foreign prosecution.  I am not

19  suggesting that it does extend to foreign prosecution

20  but that because the immunity order does not extend to

21  foreign prosecution, it does create an unresolved

22  problem for Ms. Manning, which I think is worth

23  considering.

24          With respect to constitutional rights, it

25  appears to be the government's position that this

1  challenge is premature.  While we, of course, agree

2  that we can't make arguments today about grand jury

3  questions that we haven't yet heard, there are other

4  issues with respect to the subpoena generally, again,

5  that can be heard today.

6          As mentioned, Ms. Manning has disclosed to

7  the government everything she can about her involvement

8  in the 2010 disclosures for which she took full

9  responsibility.  If the government wishes to question

10 her further about these issues, as I said before, we

11 have concerns about a perjury trap.

12          But maybe they have interest in asking her

13 about subjects beyond those disclosures, and that would

14 be very concerning because Ms. Manning has no

15 information material or relevant to any other violation

16 of federal law.  So we can only conclude at that point

17 that the government wants to ask questions of

18 Ms. Manning that do not implicate any crimes.  That

19 would be information to which the grand jury is not

20 entitled because it would be an obvious violation of

21 her First Amendment expressive and associational

22 rights.

23          As we discussed in our pleadings, there is a

24 long and well-documented history with grand juries

25 being used for improper purposes, specifically to

1   disrupt communities of activists and journalists who

2   are engaged in lawful and constitutionally valuable

3   activities.  Ms. Manning is not bringing this up in

4   order to assert the constitutional rights of

5   journalists or other third parties but to ensure that

6   the issue of the grand jury's purpose here and the

7   issue of this particular subpoena here is duly

8   considered.

9           The administration has been very publicly

10  hostile to the press.  This administration has also

11  been very publicly hostile to Ms. Manning.  The highest

12  ranking government officials have called her out by

13  name and called for her reincarceration and expressed

14  displeasure at her release.  So tremendous executive

15  pressure has been brought to bear on issues that are

16  implicated by this grand jury with respect to the

17  press, and tremendous executive pressure has been

18  brought to bear more specifically on Ms. Manning, who

19  is the subject of this individual subpoena.

20          So we think it makes sense for Ms. Manning to

21  be worried about a possible improper motive for this

22  subpoena in general.  We believe that that issue is

23  ripe today.

24          We have, of course, expressed our concerns

25  about the potential for a perjury trap and our concerns

1  that this grand jury subpoena is being used to

2  undermine Ms. Manning potentially as a witness, put her

3  in jeopardy of contempt and reincarceration, or to go

4  on a fishing expedition to constitutionally protected

5  activity.

6           As the government noted, there is a

7  presumption of regularity that attaches to grand jury

8  proceedings.  There is -- either must be a real

9  compelling need for judicial intervention into grand

10 jury proceedings, but we think that's present here.

11 Because once evidence of abuse has been introduced, it

12 is the prosecution that must demonstrate that

13 regularity.

14          Ms. Manning, of course, is not in a position

15 to introduce highly specific concrete evidence of

16 abuse.  But given the kind of attention that she has

17 been subject to, it is absolutely reasonable for her to

18 bulk at being compelled to cooperate with a government

19 that has been actively and publicly hostile to her.  We

20 believe that the prosecution should be called upon to

21 establish the regularity, not simply this grand jury

22 proceeding but specifically of this subpoena.

23          The electronic surveillance motion we believe

24 is also ripe for review but might also be appropriately

25 revisited after questioning before the grand jury.

1   Unlawful electronic surveillance, if used to propound a

2   subpoena or any question before a grand jury, would

3   constitute just cause excusing testimony.  The subject

4   of covert surveillance is rarely well positioned to

5   prevent overwhelming evidence of that surveillance, and

6   Ms. Manning is no exception.

7           That is why the law is well settled that

8   making even an allegation or at most, I think, in this

9   circuit a colorable claim of electronic surveillance is

10  sufficient to trigger the government's obligation to

11  either affirm or deny that electronic surveillance took

12  place.  This is not a particularly onerous task for

13  them, and we think it's worth noting that the

14  government did not make such a denial in their reply.

15          The government's argument here on the law is

16  a little misplaced.  Ms. Manning certainly has standing

17  to object to any electronic surveillance that would

18  have led to -- any unlawful electronic surveillance of

19  her that would have led to this subpoena or to

20  questions that may occur before it.

21          The case that is cited by both Ms. Manning

22  and the government, *U.S. v. Apple*, makes clear that a

23  cognizable claim -- and this is a quote from the

24  case -- need be no more than a mere assertion but must

25  have a colorable basis.

1        While this circuit may overwhelmingly find

2   that government denials of electronic surveillance are

3   sufficient to defeat this kind of claim, making a

4   colorable claim suffices to trigger the government's

5   obligation.  So the government would be expected to

6   make the requisite canvas of agencies and state their

7   unambiguous denials for the record.

8        So, Your Honor, all we're asking for here is

9   a very simple answer.  You know, to start with, if --

10  you know, if you ask the government now, "Are you aware

11  of any electronic surveillance," and if he says, "Yes,

12  we're done," you know, we know and we can go from

13  there.  If he says no, then all the government has to

14  do is make the relevant inquiries of the federal

15  agencies, and either they say yes, this kind of

16  surveillance happened, or no, it didn't.

17       Your Honor, we also included a motion to

18  instruct the grand jury to which the government

19  objects.  It is our position -- and I think it is

20  noncontroversial -- that the grand jurors are entitled

21  to fully understand not only the full scope of their

22  rights and power, but also the rights afforded to a

23  witness called to testify before them.  There is

24  nothing in our set of proposed grand jury instructions

25  that is legally questionable.  Each proposed

1  instruction is a simple statement of fact regarding the

2  powers of the grand jury or the rights of the witness.

3  In that the government painted such a plainly

4  educational document as in some way controversial is

5  perplexing and does not necessarily bode well for the

6  grand jury's independence.

7          Your Honor, there is also a motion for

8  disclosure of prior statements that I do want to

9  clarify in light of the government's response to us.

10  The government has objected to our request for

11  disclosure of prior statements based on the admittedly

12  stringent rules around disclosing grand jury testimony.

13  They are correct also that there is no prior grand jury

14  testimony to disclose.  I want to clarify that with

15  respect to the law on which this request is based, I am

16  arguing here by analogy.  Presumably, nongrand jury

17  testimony or other statements that are not bound by

18  Rule 6 would be significantly less tightly controlled

19  than grand jury testimony.

20          In preliminary discussions with the

21  government, counsel was given to understand that the

22  government believes Ms. Manning may have made prior

23  statements that were either incorrect or in some way at

24  variance with her prior statements or testimony.

25  Ms. Manning, of course, has raised concerns that this

1  grand jury may be working toward eliciting

2  contradictory statements or worse, and her perceptions

3  have not been helped by the public resentment that has

4  been expressed by other actors in the government.  So

5  one way in which the government might make a show of

6  good faith here would be to disclose whatever prior

7  statements they seem to be relying on to justify the

8  subpoena.

9        It is in no way a violation of grand jury

10  secrecy to reveal to a witness statements that they

11  themselves are said to have made.  Doing so could have

12  many collateral benefits, including clarifying

13  authorship and attribution and refreshing the witness'

14  recollection.  There is certainly no law that forbids

15  such disclosure, and there does appear to be law both

16  encouraging and compelling it.

17        The final component of our omnibus motion

18  concerns our motion to disclose ministerial documents,

19  and Ms. Freeman will speak to that now.  I thank you,

20  Your Honor.

21        MS. FREEMAN:  Thank you, Your Honor.  Just

22  briefly, I would reincorporate everything that I said

23  regarding our motion to unseal in that I think that the

24  law that applies in terms of determining what is a

25  matter that occurs before the grand jury also applies

1   to this when you're looking at the analysis under

2   Rule 6(e).  Cases are clear not only from the Ninth

3   Circuit but from circuits across the country that

4   documents reflecting the commencement and termination,

5   reflecting that the grand jury has been -- a term has

6   been extended, records of impanelment to include

7   manuals, procedures, and the impanelment instructions,

8   that none of those issues have been held to be matters

9   occurring before the grand jury.  It would not affect

10  deliberations of a grand jury for us to know them.  It

11  would not potentially undermine the integrity of the

12  investigation or any witness' testimony to the grand

13  jury itself.

14          THE COURT:  You have available the

15  impanelment of this grand jury.

16          MS. FREEMAN:  No, sir, we do not.

17          THE COURT:  It was impaneled in the

18  courtroom; wasn't it?

19          MS. FREEMAN:  Judge, we do not have any of

20  the documents reflecting the --

21          THE COURT:  Every grand jury I've impaneled

22  is done here in the open courtroom.

23          MS. FREEMAN:  Understood, Judge.  It is

24  something that we would request access to.  It appears

25  that the --

1          THE COURT:  I don't have it.  I don't know if

2    the clerk has it somewhere.  There is some record of it

3    around here; isn't it?  We don't impanel the grand jury

4    in secret.

5          MS. FREEMAN:  Judge, I think the issue is

6    that the -- what different courts and what different

7    clerks -- I think that it is understandable the clerks

8    would be acting in abundance of caution in refusing to

9    disclose some of those documents.  It's our position

10   that things, such as an impanelment --

11         THE COURT:  While they're here, that's a

12   matter of information they may not give out, as to who

13   in particular is sitting on a grand jury.

14         MS. FREEMAN:  Yes.  We would not be

15   requesting identifying information of who those grand

16   jurors are.  These would just be documents basically

17   affecting the form and function, the mode, if you will,

18   of operation of this particular grand jury, not

19   regarding persons specifically on the grand jury, not

20   regarding witnesses who have testified before it, but

21   simply the -- what we would call the ministerial

22   documents.

23         THE COURT:  That's impaneling the grand jury

24   and the termination of the grand jury when it's over.

25         MS. FREEMAN:  Yes, sir.  So that would be the

1  request.  It's not for any of the private information.

2          THE COURT:  All right.  I understand.

3          MS. FREEMAN:  Thank you, Judge.

4          All right.  Mr. Traxler.

5          MR. TRAXLER:  Thank you, Your Honor.

6          Your Honor, I'd like to pick up where the

7  Court began, and that is that Ms. Manning's arguments

8  today are premature.  As Your Honor noted, there has

9  been no questioning yet.  Ms. Manning has not appeared

10 before the grand jury.  So she can only speculate that

11 the questions that might be asked would infringe upon

12 the rights that she cites in her papers.  As we

13 explained in our submission, such premature arguments

14 should be rejected.  They should be normally answered

15 on a question-by-question basis.

16         That said, Your Honor, we did argue

17 alternatively that this motion could be denied on its

18 merits.  We would, in fact, urge the Court, if it's so

19 inclined, to deny the motion on its merits now.  We

20 submit that the advantage of doing that would be it

21 would hopefully reduce the number of times or eliminate

22 the parties coming up here during the actual grand jury

23 questioning to have the Court rule on various issues

24 that have already been teed up in the papers.

25         So with that, I would like to address the

1    merit arguments that Ms. Manning makes in her papers.

2    First would be her Fifth Amendment claim.  As the

3    government argued in its papers, under *Kastigar*

4    (phonetic), there are no Fifth Amendment concerns here.

5    Ms. Manning has received full use and derivative use

6    immunity for her testimony by both this Court and the

7    Department of the Army.  Under *Kastigar*, that

8    eliminates any Fifth Amendment concerns.

9           The next argument Ms. Manning makes is a

10   First Amendment claim, and the government submits, as

11   we argued in our papers, that she has not asserted any

12   legitimate First Amendment interest that could be

13   infringed upon.

14          We submit, Your Honor, that the Supreme

15   Court's decision in *Branzburg v. Hayes* forecloses

16   Ms. Manning's arguments.  There the Supreme Court held

17   that reporters had to testify in front of the grand

18   jury even if it required them to disclose their

19   sources.  The reporters argued that they should have a

20   First Amendment privilege to not have to go before the

21   grand jury because disclosing those sources would have

22   an inhibiting effect for reporters to recruit sources

23   and it would diminish the flow of news.  The Supreme

24   Court rejected that argument.  It held it was

25   speculative.  We submit, Your Honor, that Ms. Manning

1  has an even weaker claim than the reporters had in

2  *Branzburg*.

3      Even assuming the questioning in the grand

4  jury were to touch on the disclosures from 2009 and

5  2010, Ms. Manning had no First Amendment rights with

6  respect to those disclosures.  As the government noted

7  in its papers, Ms. Manning was a government insider who

8  signed a nondisclosure agreement, and under

9  well-established precedent, that means that she had no

10  First Amendment rights.

11      Ms. Manning talks about the concerns that the

12  questioning would have for journalists.  I'll say at

13  the outset:  Certainly, Ms. Manning seems to be

14  speculating that at some future date the grand jury may

15  return an indictment that she speculates might violate

16  the First Amendment.  That's not a legitimate basis,

17  Your Honor, for a fact witness to refuse to testify in

18  front of the grand jury.  If it was, the whole grand

19  jury process would break down if every fact witness who

20  came in front of the grand jury could speculate that

21  the crimes being investigated might violate someone

22  else's constitutional rights.  She has no standing to

23  make that argument.

24      Next, Your Honor, Ms. Manning argues that the

25  grand jury subpoena was improperly motivated, and we

1  emphasize to the Court that Ms. Manning's speculations

2  are exactly that.  They are mere speculations.  As the

3  cases that we cited in our papers show, speculation and

4  conjecture is not enough to rebut the long-standing

5  presumption that the grand jury acts reasonably and

6  properly when it issues a subpoena.

7       Your Honor, I want to address in particular

8  one thing that we heard throughout counsel's argument,

9  and that is the speculation that the government issued

10 a grand jury subpoena just so it could catch

11 Ms. Manning in a so-called perjury trap.  Again, we

12 emphasize to the Court that's just speculation as to

13 what the government's motives are.  There's no basis

14 for that.

15      We also submit, Your Honor, that that

16 argument is premature.  Any concerns about an alleged

17 perjury trap are properly raised if there was some

18 charge for perjury at a future date.  It's not a

19 justification for a fact witness to refuse to go in

20 front of the grand jury.

21      Finally, Your Honor, we submit that

22 Ms. Manning has not provided the Court with a colorable

23 basis for believing that the government has -- I'm

24 sorry -- that she might have been subjected to unlawful

25 electronic surveillance.  As the Court noted in its

1  papers, there's certain threshold requirements that

2  Ms. Manning has to meet to even trigger the

3  government's obligation to affirm or deny or generally

4  respond to her allegations.  She has to come forward

5  with something more than mere suspicion that she might

6  have been subjected to unlawful electronic

7  surveillance.

8          If you read her papers, she clearly has not

9  done that.  You can tell by the way she couches her

10  argument throughout her papers, that she has reason to

11  believe, that she believes she might have been subject

12  to unlawful electronic surveillance.  The truth is she

13  has no idea, and she is using this statute improperly

14  as an attempt to get discovery from the government.

15  Therefore, the government submits that Ms. Manning is

16  not entitled to even that threshold affirmance or

17  denial from the government about whether there is any

18  such surveillance in this case.

19          There is one last topic I want to touch on,

20  and that's the ministerial documents issue that counsel

21  raised just a moment ago.  I would emphasize that, as

22  Judge Ellis noted in the decision we cited in our

23  papers, the Fourth Circuit has not adopted the approach

24  of the cases that Ms. Manning cites.  We submit that

25  Ms. Manning, if there is anything done in open court,

1  should figure out on her own what's available.  If it's

2  not available because it was not done in open court, we

3  submit she should not receive those materials.

4         There is no right of access to the grand jury

5  proceedings.  Ms. Manning has provided no justification

6  or no need or has not provided any justification or

7  explained why she needs those documents.  In light of

8  that, we submit to the Court that the general rule of

9  secrecy should apply here and she should not receive

10  any documents relating to the grand jury proceedings

11  that have not otherwise already been done in open

12  court.

13         So with that, Your Honor, we would rest on

14  our papers for the rest of the arguments.  We submit

15  that the Court should deny the motion to quash.  It's a

16  bedrock principal, a long-standing principal in our

17  jurisprudence that the grand jury is entitled to every

18  person's evidence.  We submit that Ms. Manning is no

19  different.  She has been lawfully subpoenaed to testify

20  in the grand jury.  The Court has ordered her to

21  testify already fully and truthfully in front of the

22  grand jury.  She's been fully immunized with use and

23  derivative use testimony -- I'm sorry -- immunity in

24  connection with her testimony.  Like every other

25  citizen in this nation, Ms. Manning should be required

1   to appear before the grand jury pursuant to the

2   subpoena and to testify fully and truthfully.  We

3   submit that there is no reason to treat Ms. Manning

4   differently than we would any other civilian in

5   responding to a grand jury subpoena.

6           Thank you, Your Honor.

7           THE COURT:  All right.  Well, as I've

8   listened to the arguments here, it's almost like

9   listening to lawyers discussing a case that they're

10  looking into and finding out what issues are involved.

11  This whole thing is just really speculation about what

12  may or may not happen.  Most of this is really

13  premature except your issue of the Fifth Amendment.  I

14  find that you have no rights in that regard because of

15  the immunity order that I've entered, and you have one

16  from the military.  I also find that there's no First

17  Amendment implication here that's been represented to

18  me or that I can even get my hands around to rule on.

19  There just isn't anything.

20          There's no evidence presented of any improper

21  motive.  You've raised questions about what might or

22  might not be the motive.  I don't have anything in

23  front of me that would require me to rule on it.

24          Also, your motion to instruct the grand jury,

25  I see no need to instruct the grand jury.

1             Your motion for disclosure of prior

2   statements, that's going to be denied as well.

3   Disclosing the ministerial documents here, I don't see

4   any relevancy that's been presented to me that would

5   require that at all.

6             So with that said, your motion to quash the

7   subpoena will be denied.

8             Now, I don't know if you want to set a time

9   frame on this unsealing or whatever it is, time to

10  respond to it.  I mean, I'll deal with that.

11            MR. TRAXLER:  Your Honor, the government

12  would request two weeks to prepare a response.  Like I

13  mentioned, we still need to receive the papers from

14  Ms. Manning and then time to formulate a response.

15            THE COURT:  All right.  Why don't you all get

16  together on that.  Two weeks sounds reasonable.  Just

17  notice it to a Friday, and I'll deal with it when you

18  get ready to argue it again.

19            MR. TRAXLER:  We will.  Thank you, Your

20  Honor.

21            MR. KROMBERG:  If I may, Your Honor.  Our

22  time before the grand jury is tomorrow at 9:30.  We ask

23  the Court -- we just let the Court know that so in case

24  these issues recur tomorrow or new issues come up

25  tomorrow, that's when we're expecting to be before the

1  grand jury.

2           THE COURT:  Well, I hope that I have dealt

3  with enough of them that we won't have any problems

4  like that.  If not, I'll be around.

5           MR. KROMBERG:  Thank you, Your Honor.

6           THE COURT:  All right.  We'll adjourn until

7  tomorrow morning at 9:30.

8           -----------------------------------
                      Time:  10:15 a.m.
9

10

11

12

13

14

15

16

17

18

19

20

21
        I certify that the foregoing is a true and
22
    accurate transcription of my stenographic notes.
23

24
                          _____
25                        Rhonda F. Montgomery, CCR, RPR

                              UNDER SEAL

        Rhonda  F.  Montgomery    OCR-USDC/EDVA    (703) 299-4599