UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: Grand Jury Subpoena, )<br>)<br>CHELSEA MANNING, )<br>)<br>Subpoenaed Party. )<br>_____ ) | **DECLARATION**<br><br>**19-1287-cv** |

1. My name is Chelsea Elizabeth Manning. I am competent to be a witness, and I possess personal knowledge of the facts set forth below.

2. Currently I am confined at the Alexandria Detention Center ("ADC"), in Alexandria, Virginia, following a finding of civil contempt on March 8, 2019, for refusing to cooperate in a grand jury investigation that I believe relates to events already disclosed in exhaustive testimony in 2013, including the extent of my knowledge.

3. Initially, after arriving at ADC, the jail placed me in Administrative Segregation ("adseg") status, despite the stated concerns of myself and my legal representatives regarding the effects of prolonged isolation compounding the trauma I suffered in a year of solitary confinement during my previous time in confinement. I stayed on adseg for 28 days, without any misbehavior or ill will on my or anyone else's part to rationalize such isolation. This isolation caused extraordinary pain for me.

4. While in adseg, I suffered many of the ill effects of prolonged isolation as described by former United Nations Special Rapporteur on Torture Juan Mendez. For instance, consistent with the research of former Harvard Medical School professor Stuart Grassian, I experienced difficulty keeping attention on anything, sometimes referred to as a "dissociative stupor." Thinking and concentrating get harder. Anxiety,

frustration with minor things, irritation, and a spiraling inability to tolerate each symptom take hold. At one point I started feeling ill during a short visit in a non-contact visit booth while struggling to have even a normal conversation. After weeks of under-stimulation, I became nauseated with vertigo and vomited on the floor, ending my visit prematurely. Such symptoms make up what Grassian describes as a special psychiatric syndrome caused by prolonged solitary confinement. Many of the effects last permanently after only fifteen (15) days of isolation.

5. After public outcry and pressure, the ADC released me into general population ("GP") after 28 days of isolation.

6. After two months of confinement, and using every legal mechanism available so far, I can - without any hesitation - state that nothing that will convince me to testify before this or any other grand jury for that matter. This experience so far only proves my long held belief that grand juries are simply outdated tools used by the federal government to harass and disrupt political opponents and activists in fishing expeditions. Without committing a federal crime, and after exhaustive testimony at a trial several years ago, I am again ripped from my life by a vindictive and politically-motivated investigation and prosecution. The way I am being treated proves what a corrupt and abusive tool the grand jury truly is. With each passing day my disappointment and frustration grow, but so too do my commitments to doing the right thing and continuing to refuse to submit.

7. My decision not to testify before grand juries is rooted in the study of history and philosophical principles. Many times in this nation's history, people who speak out or express dissent against the government face disproportionate repression. One of the

most common tools to silence dissent, the grand jury, attempts to sow distrust within activists' organizations and communities through secrecy and compelling exhaustive and redundant testimony aimed at identifying other members of that community.

8. I understand that this grand jury related to my disclosures of classified and unclassified but sensitive information and records in 2010. I acted alone in these disclosures. The government is still preoccupied with punishing me, despite a court-martial, sentence, and presidential commutation nearly two years ago. This can be seen in statements and actions by several administration officials, especially the current secretary of state, who threatened Harvard University over a low-paid speaking engagement in 2017, when he was Director of Central Intelligence. This speaks compellingly to my rationale for both my disclosures, for which I already served time, and my present refusal to cooperate with an increasingly frightening and untrustworthy government. Let me state clearly, again, that my actions were my own.

9. I believe my principles allow me to focus on helping others, and to challenge the use of power to coerce or manipulate people. Such coercive power forms what I define as "violence," and the "threat of violence" which powerful institutions attempt to accumulate to obtain more power.

10. I do not believe, nor do I possess any reasonable evidence to believe that participating in this grand jury could lead to any new theories of criminal liability for any person. I took responsibility for my actions over six years ago. I find it difficult to comprehend that the Department of Justice believes that my redundant testimony could actually provide any value to an investigation. Their stated reasons appear disingenuous at best and outright malicious at worst. The government's theories contradict not only

my testimony, but the forensic evidence the military possesses. Therefore, I suspect they are simply interested in previewing my potential testimony as a defense witness, and attempting to undermine my testimony without the benefit of reviewing forensic evidence. This justifies my theory that participating in this investigation functions simply to abuse the justice system for political ends.

11. I believe this grand jury seeks to undermine the integrity of public discourse with the aim of punishing those who expose any serious, ongoing, and systemic abuses of power by this government, as well as the rest of the international community. Therefore, participating in this fishing expedition - which potentially exposes other innocent people to the grand jury process - would constitute an unjustifiable and unethical action. Now, after sustaining serious psychological injury from my current confinement, I don't wish to expose any other person to the trauma and exhaustion of civil contempt or other forms of prison or coercion.

12. In jail at ADC, I try every day to maintain my physical, mental, and intellectual capacities, as well as some modicum of human dignity. I live a quiet social life in a housing unit that holds a dozen people, who rotate frequently. I try to occupy myself with crossword and sudoku puzzles in the absence of good reading material. I try to stay positive despite the aftermath of isolation and the knowledge that my life once again is put on hold for a few more years, potentially. With limited books, I read what I can, though most are books that are either already read by me or are simply bad. I am re-accustomed to the intrusion and lack of privacy of frequent searches and heavy surveillance.

13. I arrived at ADC with concerns and anxiety about my physical health, particularly so soon after gender confirmation surgery in October. My post-surgery regimen requires delicate and regular self-care at least twice daily, including the use of anti-bacterial soap and dilators. Otherwise, I risk serious medical complications, including permanent injury or deadly infections. I worry about dilating in an environment rife with poor hygiene and with limited time and no privacy. I worry about seeing medical professionals with knowledge about post-operative care if complications develop, which I have reason to think has already happened. I worry about regular access to daily hormones. Unfortunately, despite initial assurances by jail and U.S. Marshal Service ("U.S.M.S.") officials, such efforts normally come slower and are very limited. It appears that I have already developed some complications during my stay at ADC. Medical staff acknowledges they lack expertise to examine or assist me appropriately, In response, I requested outside professionals at my own expense over three weeks ago. Despite this, I remain unseen by a professional competent to treat me. Every passing day further complicates my medical care and health, exposing me to permanent, intractable complications. The intrinsic bureaucracy and formality of ADC and USMS policy risks me to permanent harm. I do not know how serious these complications are, but I may need costly reparative surgery upon my release, causing me even more permanent injury and psychological harm, not to mention the expensive medical bills.

14. In an ideal world, agreeing to cooperate would avoid this situation, however, this government abuses the grand jury process, and forces me to choose between an

unethical decision and suffering intimate and permanent consequences for doing the right thing. I am not willing to compromise for my own physical benefit.

15. This decision comes at an overwhelming cost, My physical and mental health deteriorate rapidly in conditions normally reserved for short term confinement. I am almost entirely without sunlight. My skin regularly breaks out from bacterial infections. I gain weight due to poor nutrition, currently at nearly twenty pounds since March.

16. Sleep and concentration remain difficult. Mental health access remains limited, without access to comprehensive treatment for complex post-traumatic stress — stemming in part from previous confinement conditions.

17. My business now falters, without me able to appear at speaking engagements or professional consultations. I recently laid off a valuable and trusted employee. Numerous existing contracts remain vulnerable, likely needing renegotiation or outright cancellation.  My friends and colleagues suffer from the impact of my absence, causing me to worry endlessly about their health and well being. I missed the premier event of a documentary about my commutation in which dozens of my friends reunited afterward.

18. I sometimes see visitors, but only in a non-contact booth, with inches of glass between us. This makes visitation uncomfortable, surreal, and saddening.

19. I receive between dozens and several hundred letters a day. I lack the resources or time to respond to even a small fraction of these. The impact on my friends and supporters feels overwhelming and makes me feel lonely.

20. I receive enormous support from all around the world. My family and close friends all support me and express their pride of me. It's emotionally overwhelming sometimes to see their unwavering generosity. I receive warmth and strength from colleagues, educators, lawyers, diplomats, activists, factory workers, veterans, journalists, union leaders, store clerks, gardeners, chefs, airplane pilots, and politicians from all across the U.S. and the world at large, every class, culture, and age imaginable.

21. Despite the heartbreak and hardship, cooperation with this grand jury is simply not an option. Doing so would mean throwing away all of my principles, accomplishments, sacrifices, and erase decades of my reputation - an obvious impossibility.

22. As before, I cannot regain the lost time - which may again extend to years. Repairing the damage to my relationships and both my physical and mental health might never come to pass. Whatever one might make of my principles and decisions, I shall continue to make hard choices and sacrifices rather than relinquish my ethical positions in exchange for mere trinkets of personal gain or self-pleasure in the form of being released.

23. Over the past decade, I grappled with bouts of depression. I can think of nothing that could exacerbate those struggles more than pretending to live as someone I am not once again, and turning my back on everything I care about and fight for. Jail, and prison, exist as an archaic institution hiding the basest stream of dehumanizing and humiliating behaviors by the government — a trail of mounting loss and pain. Here, behind the event horizon, I remain certain that losing the approval, trust, and acceptance of my friends, family, and supporters would make this situation worse.

24. I wish to return home. I want to return to my work — writing, speaking, consulting, and teaching. The idea I hold the keys to my own cell is an absurd one, as I face the prospect of suffering either way due to this unnecessary and punitive subpoena: I can either go to jail or betray my principles. The latter exists as a much worse prison than the government can construct.

25. I digress a bit - but the point is, I'm not going to change my mind. Not now, not ever. So be it.

> I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: May 5, 2019
   Alexandria, VA

_____
Chelsea Elizabeth Manning